## WHITEHALL MFG. CO. v. WISE BROTHERS.

</div>

<div align="center">ERROR TO THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY.</div>

<div align="center">Argued March 5, 1888—Decided April 2, 1888.</div>

1. Defendant ordered a car-load of No. 3 siding. In a suit for the price of a car-load of siding delivered, after evidence from the plaintiff distinguishing grades No. 3 and No. 4 by the white sap and sound knots of No. 3 and the shake knots and black sap of No. 4, it was not error to admit evidence from the defendant descriptive of the inferior quality of the siding delivered, in respect of its black sap and shake knots, making it unsalable as No. 3 siding, and to submit to the jury to find whether it was of the kind or grade No. 3 ordered.

2. Under the circumstances of this case, it was not error to refuse permission to send out with the jury a statement of the plaintiff's claim and to allow to go with them pieces of siding admitted in evidence.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 144 July Term 1887, Sup. Ct.; court below, No. 38 April Term 1885, C. P.

On March 16, 1885, an action in assumpsit was brought by the Whitehall Manufacturing Company of Whitehall, Mich., against L. R. Wise et al., trading as Wise Brothers, at Bangor, Pa., to recover for lumber sold and delivered.

At the trial on January 20, 1887, it was made to appear:

On October 22, 1884, the defendants ordered of the plaintiff company " a car of No. 3 siding at same price as before, spot cash as soon as delivered." A car of siding arrived at Bangor, the place of delivery, on November 24th, and on December 19th, the defendants wrote a postal card to the plaintiff ·company, on which it was said : " The car of siding is in, and as soon. as the boys gets it off, they have unloaded some already, and we see it don't run as good as you used to send unless that in the car will turn out better. Can you save or have us ready 2 cars No. 1 in the spring, say car and half No. 1 and half car No. 2." On January 21, 1885, in reply to a letter demanding payment, the defendants wrote the plaintiff company as follows :

Dear Sirs :—In regards to the car of No. 3 siding, we can send you draft any day but cannot pay you that price for that siding, as we wanted siding the same as you always sent us as it was worth $4 per M more than this, and it is too poor for our trade, as we can't sell a bit of it at the price, and always before it went fast. We will. have to lower the price on it if we wish to sell any, as every one says it is too dear. Didn't you make a mistake and send us No. 4 instead of No. 3 ? Please let us know what you can do on it by return mail, and can send you draft immediately. Hereafter, mind you, we want it the same as you always sent us heretofore. Can you have us a couple of cars of No. 1 and No. 2 ready by April 1st, and what price ?

The plaintiff introduced the testimony of a number of witnesses, experts in the lumber business in Michigan, taken by depositions, showing that of white pine siding as produced and graded in the west there were five grades known to the trade, clear, Nos. 1, 2, 3, and 4, or cull ; among these No. 3 siding was distinguished by having white sap and good sound knots ; shake and black sap siding goes into No. 4, or cull.

In the defendants' case, Samuel R. Walter, their clerk and bookkeeper, was called ; he saw the lumber unloaded, or some of it. Q. State what was the character of this lumber as to quality ? The plaintiff objected that the defendants having received the lumber and used it, inferior . quality was no defence in an action for the price. The objection was overruled.[1]

Q. State what this lumber was as to quality? A. Well, it was a very bad quality of lumber; the boards were black sap and it was very knotty, loose knots. Q. Did you see the whole of this car-load of siding? A. Yes. Q. State whether it was salable as No. 3 siding. A. It was not. Q. Why not? A. It was too poor for our trade. Objected to as incompetent and irrelevant. The objection was overruled.[2]

The testimony showed that all the siding had been sold or used by the defendants except about 1000 feet. At $11 per thousand the plaintiff's claim was $385.50, with interest from November 12, 1884.

When the jury were to retire with the case, the defendants proposed to send with them a statement. Plaintiff objected. The court refused the proposal. Then the plaintiff proposed to send a statement out with the jury. Defendants objecting the court refused the proposal.[3]

The jury after they had retired sent into the court-room for the sample pieces of siding and the depositions which had been put in evidence.

By the court: Let the boards be sent out to the jury, but the depositions cannot be sent out.[4]

The court, REEDER, J., charged the jury and answered the points presented as follows:

When a person orders a particular bill of goods of another and the person from whom the goods are ordered fills the order, it is a warranty upon the part of the consignor of the goods sent to the consignee that the goods are the kind of goods ordered by him. Thus, if a man orders from a manufacturing iron company iron known to the trade as No. 1 iron and the company ships the bill of goods in accordance with the order, it is a warranty upon its part that the goods so shipped are No. 1 iron. It is no warranty, however, as to the quality. The order is filled when he ships the kind of iron ordered, whether the quality is good No. 1 iron or bad No. 1 iron. The same rule of law applies to slate and it applies to lumber, and it applies to all things that are used as articles of commerce.

If a man orders a bill of No. 3 lumber from a manufacturer, and the order is filled, it is a warranty upon the part of the

manufacturer that the kind of lumber sent in obedience to the order is the kind of lumber ordered, namely, No. 3 lumber. But it is not a warranty as to the quality, and whether it is good No. 3, or whether it is bad No. 3, the person taking and accepting and using the lumber is obliged to pay the bill. In this case, Wise Brothers, who are a firm doing business in Bangor and Portland in this county, ordered of the plaintiff, The Whitehall Manufacturing Co., who do business in Whitehall in Michigan, a certain bill of lumber amounting to 35,000 feet of No. 3 siding.

The plaintiff contends that the No. 3 siding was shipped to Wise Brothers, and it is not contradicted that the quantity of lumber that is sued for in this action, was sent to the defendants and was delivered to them and stored by them in their lumber yard. If this was No. 3 lumber then plaintiff is entitled to recover the full amount of their bill, no matter whether it was good No. 3 lumber or bad No. 3 lumber. If the amount of lumber shipped, however, was not No. 3 siding then the defendants are entitled to a set-off against the claim of the plaintiff for the difference in value between the lumber shipped and the No. 3 lumber ordered. This narrows the inquiry down to a very narrow margin, and the only question for your consideration, and the one upon which your verdict must be determined, is, whether from the evidence, this lumber sent by the plaintiff, and received by the defendants, was No. 3 lumber or not. If it was not No. 3 siding, no matter whether it was good No. 3 or bad No. 3 siding, the defendants are obliged to pay the full amount of the bill and that will be determined by your verdict.

[If, however, you determine from the evidence that the lumber sent was not No. 3 siding, but that it was a lower and a cheaper grade of lumber, then the plaintiff is entitled to recover whatever may be the difference in your judgment in the market price of the lumber sent and the amount of the plaintiff's bill; I mean the difference in value between the kind of lumber sent and the kind of lumber ordered.] [9] . . . . .

What is the evidence in regard to the quality of this lumber, or rather the kind of lumber sent?

The witnesses called by the plaintiff are Charles W. Fox; who testifies that he has been engaged in the manufacture and

handling and selling of lumber for eight years and over, and whose father owned a sawmill and for whom he bought logs, and that he also graded and dressed lumber for him, and that while he was with the Whitehall Manufacturing Company he was exclusively engaged in it, and he says in answer to the sixth interrogatory—which is a question to him as follows, " How many grades of siding are there that are known to the trade, and how is No. 3 siding distinguished from other grades," that there are five grades of siding, known to the trade as clear, No. 1, No. 2, 3, and No. 4 or cull, and that among these the No. 3 siding is distinguished on account of its allowing more sap and knots than the clear, or No. 1 and No. 2, or the higher grades, but is better quality than No. 4 or cull, which is the poorest grade made.

[The court here reviewed the testimony of others of the plaintiff's witnesses as to same subject.]

A number of these witnesses also testified to the fact that they loaded the cars, and that when they did so they selected the lumber which was put upon the cars as No. 3 siding. If you believe this testimony, gentlemen of the jury, and believe that they selected it from their No. 3 siding, and you believe the testimony of the other witnesses for the plaintiff, that their grading of lumber was the same as that of the trade generally throughout the country, and you believe that this carload of lumber was No. 3 lumber, although it may have been poor in quality, then the plaintiff would be entitled to recover.

[If, on the other hand, you believe that it was not No. 3 siding, but that it was No. 4, or what is described in this testimony as "cull," then the defendants would be entitled to set off against this bill the difference in value between the No. 4, and the No. 3 siding charged for.] [10]

The testimony of the defence is that it was poor lumber. No one of the witnesses, as I recall the testimony, grades the lumber and says that it was No. 4 lumber. They say that it was a poor quality of siding, but they do not say that it was such a poor quality of siding as not to be included in the grade known to the trade as No. 3 siding. Some of them testify that it was the poorest they ever had in their lumber yard. One of the witnesses says it was the poorest he ever saw. Under all the testimony we have concluded to submit to you,

as a question of fact whether this lumber so delivered at that time to the Wise Brothers was No. 3 siding or whether it was No. 4 siding. If it was No. 3 siding, although it may have been poor in quality, and not as good as the other No. 3 that they may have received, either from the firm, or from any other person from whom they were in the habit of purchasing, nevertheless, they would be entitled to recover.

[If it was not No. 3 siding, but was No. 4, and that is a fact that you must determine from all the evidence in the case, then the defendants would be entitled to deduct from the amount claimed by the plaintiff whatever was the difference in value between the lumber received and No. 3 siding.][10] . . .

For the purpose of determining whether this lumber was in accordance with the contract, as I have already said, to deliver No. 3 siding, you will have a right to take into consideration these letters of complaint, the delay in sending these letters of complaint, and you will also have the right to take into consideration the testimony on the part of some of the defendants' witnesses in relation to the sales of this lumber, the prices they received and the uses to which the lumber was put.

If, under all the testimony, you come to the conclusion that the lumber was a poor quality of No. 3 siding, then the plaintiff would be entitled to recover the full amount of their bill.

[If you find, however, that the quality of the lumber was such as not to entitle it to be graded as No. 3 siding, but that it was No. 4 siding, then the defendants would be entitled to deduct from the price of the lumber the difference in the value between that and the next lowest grade of lumber, whatever you may find it to be.][10]

The plaintiff's points are answered as follows:

1. The defendants having used the lumber are estopped from defending against an action for the price by setting up the defence that the lumber was of inferior quality.

Answer: As defining and distinguishing quality from grade, this point I would affirm. If, however, it is intended in the term "quality" also to embrace the grade of the lumber, then I would deny it as a legal proposition.[5]

2. There was no warranty of quality, under the law and evidence, in this case, either express or implied.

Answer: This point I affirm as qualified by my general charge.

Charge of Court below.

3. Where there is neither warranty nor misrepresentation, a defect in quality is no defence to an action for the price of goods.

Answer: As a legal proposition, this point I affirm.

4. If the lumber was of an inferior quality it was the duty of the defendants not to have received it or used it in any way.

Answer: This point I also affirm as qualified by my general charge. You must bear in mind, in relation to my instructions upon these points, the distinction which I made between kind and quality.[7]

5. Under the law and evidence the verdict must be for the plaintiff.

Answer: This point I understand is not disputed. The verdict must be for the plaintiff for some amount, the defendants claiming that it is much lower than the amount which the plaintiff claims and sues for. The amount, therefore, must be determined by your verdict. The plaintiff, however, is entitled to your verdict for some amount.

6. Had there been no delivery or a conditional one, the purchaser might not have been bound until the quality of the lumber had been ascertained; but the parties evinced by taking the last step, that nothing remained to be done in order to perfect the contract.

Answer: This point, as a legal proposition, I affirm. But, as there always is, in a contract of this character where a specific kind of lumber is ordered, by the filling of the order, a warranty as to kind, the defendant would have the right, either to refuse to take the goods, or he would have the right to accept the goods and to set off as a defence against the suit upon the bill or account the damages occasioned to him by reason of the breach of warranty.[8]

7. The only testimony in the case as to the grade of siding furnished being the positive testimony of plaintiff that it was No. 3, that standing uncontradicted the verdict must be for plaintiff.

Answer: This point I deny as a whole.

The defendants' points are now answered:

1. If the jury believe that the siding for which the present suit is brought contained black sap and loose knots it would

reduce the grade of the lumber from No. 3 to No. 4, as the testimony of the plaintiff shows that the black sap and loose knots was what particularly distinguished the No. 4 from the No. 3.

Answer: This point I deny.

2. If the jury should find that the lumber in dispute was not of the grade of No. 3 siding as being free from black sap and loose knots, their verdict must be for the price per thousand of the lower grade.

Answer: This point I deny because the question as to whether No. 3 siding must be free from black sap and loose knots in order to constitute No. 3 siding is a disputed question of facts under all the testimony.

3. A sale of lumber as No. 3 siding warrants the article to be of that kind and grade.

Answer: This point I affirm.[6]

The verdict was in favor of the plaintiff for $6, and judgment being entered thereon, the plaintiff took this writ, assigning as error:

1, 2. The admission of defendants' offers.[1][2]

3, 4. The refusal to send out the plaintiff's statements, and the sending out of the pieces of siding.[3][4]

5, 7, 8. The answers to the plaintiff's points.[5][7][8]

6. The answer to the defendants' third point.[6]

9, 10. Those parts of the charge embraced in [ ][9][10]

*Mr. T. F. Emmens* (with him *Mr. Charles F. Walter*), for the plaintiff in error:

1. The testimony of men entirely familiar with the business was conclusive that the grade of siding marks its quality, and that in this connection " grade " and " quality " are interchangeable terms, as judicially recognized in Carondolet Iron Works v. Moore, 78 Ill. 65. The court below, however, took the opposite view and, throughout the trial, insisted on regarding the " grade " of siding as synonomous with " kind " or " species." Now, if the grade of siding marks it as of a particular " species " or " kind " of siding, and that grade is determined by its quality, it seems that it would make all the difference in the world whether it was good or bad.

2. Grades of lumber are descriptive of quality and serve no

other purpose. No. 4 siding is in species or kind, siding, the grade or quality next below No. 3. In kind it is the same as No. 3 ; in quality it is inferior to No. 3. Wherefore, to admit testimony that siding was of a grade lower than No. 3 was to admit testimony that it was inferior in quality to No. 3 ; and in an action for the price of goods furnished in good faith, " inferiority of quality is no defence : " Fraley v. Bispham, 10 Pa. 320 ; Whitaker v. Eastwick, 75 Pa. 231 ; Shisler v. Baxter, 109 Pa. 447.

3. While we admit that it may be within the discretion of the court to permit a plaintiff's statement of claim to go with the jury, yet it must be in " the exercise of a sound discretion." There was no good reason for the refusal in this case, where a calculation was necessary in the making up of a verdict : Commonwealth v. Lebo, 13 S. & R. 175 ; Frazier v. Funk, 15 S. & R. 26 ; Little Schuylkill Nav. Co. v. Richards, 57 Pa. 148. Moreover, the sample pieces of lumber, which *were* allowed to go out, had been selected from the worst lumber, and besides had never been offered in evidence, nor at any time marked as exhibits.

*Mr. P. C. Evans,* for the defendants in error :

1. The plaintiff's testimony showed the distinction between the two grades, No. 3 and No. 4 siding. By our testimony we showed that the car-load in dispute had running through the whole of it the black or staining sap and loose knots which put it in grade No. 4. They endeavored to show they had sent us No. 3 grade ; the jury found we received No. 4 quality. Grade and quality being interchangeable terms, the court was right in admitting evidence of quality when quality meant grade. A contract to deliver goods of a quality, as well as of a species, defined and fixed, is as capable of enforcement as any other contract : Warren v. Coal Co., 83 Pa. 440 ; Edwards v. Hathaway, 1 Phila. 547.

2. The stenographer's ink which had noted plaintiff's objection to the going out of the defendants' statement was not yet dry, when their like offer was made and refused. Doubtless the court in its discretion would have allowed both statements to be sent out, but could not allow theirs after refusing ours. The pieces of siding were offered in evidence by defendants ; the plaintiff's objection thereto was overruled and bill sealed.

OPINION, MR. JUSTICE GREEN:

The article which the defendants ordered was "a car of No. 3 siding." The defence set up against the plaintiff's claim was that the lumber sent to them by the plaintiff was not No. 3 siding, but No. 4 siding. It is perfectly manifest from all the testimony that in the trade there was a very palpable difference between the kind of siding known as No. 3 and the kind known as No. 4. It is equally certain that the value of No. 4 was materially less than the value of No. 3. It is not questioned that if the kind sent to the defendants was No. 4, they were not legally bound to pay the price of No. 3 for it. In other words, the defendants, if the kind of lumber sent them was No. 4, were only bound to pay the price of No. 4. As we understand the charge of the learned court below, this was the way in which the case was delivered to the jury. Thus, in the charge the court said to the jury: "Under all the evidence we have concluded to submit to you as a question of fact whether this lumber so delivered at that time to the Wise Brothers, was No. 3 siding or whether it was No. 4 siding. If it was No. 3 siding, although it may have been poor in quality and not as good as the other No. 3 that they may have received either from the firm, or from any other person from whom they were in the habit of purchasing, nevertheless they would be entitled to recover. If it was not No. 3 siding but was No. 4, and that is a fact that you must determine from all the evidence in the case, then the defendants would be entitled to deduct from the amount claimed by the plaintiff whatever was the difference in value between the lumber received and No. 3 siding."

We can see no error in this. The jury was carefully admonished not only in this but in other portions of the charge, that if the lumber sent was of poor quality, but still was No. 3, the defendants would be bound to pay the full price of No. 3. But if it was No. 4 and not No. 3, the defendants were only bound to pay the price of No. 4. In every legal aspect of the case, this instruction was entirely sound. The complaint of the plaintiff in error is that in distinguishing between No. 3 and No. 4 siding, only a difference in quality is indicated by the witnesses and the court, and they comment specially upon the use of the word grade as distinguishing a "kind," when it really distinguishes only a quality. So far as the court is con-

cerned, particular care was taken to indicate that the difference must be one of kind, and while the word " grade " was occasionally used both by the witnesses and the court, it was only used to designate the same subject as was expressed by the word " kind." We can see no difference in the words themselves as expressive of the same idea. The word " grade " is perhaps somewhat more technical, but it is perfectly manifest that the classification of the lumber into numbered grades, as Nos. 1, 2, 3 and 4, was in the trade a practical division of it into different kinds. At any rate this was the sense in which the witnesses and the court used the word " grade," and the jury could not be misled by it.

It is a mere play upon words to say that because " grade " means also " quality," therefore only quality was meant when the word grade was used, and the context both of the testimony and charge fully illustrates that no such confusion was intended or expressed. It is true that No. 4 siding was in quality inferior to No. 3, and this was necessarily developed in the examination of the witnesses; but that circumstance does not alter, but rather confirms, the fact that in the trade No. 3 siding was one kind and No. 4 another. Some of the witnesses describe the distinction by defining the physical differences in the two grades. Thus William H. Ames, an expert witness for plaintiff, testifies : " There are five grades of siding known to the trade. The No. 3 is distinguished from the others as follows : We grade white sap and good, sound knots into No. 3 ; shake and black sap goes into No. 4, or cull." So that it would seem white sap and sound knots constituted No. 3, and black sap and shake or loose knots, No. 4. It is unnecessary to refine upon the distinction. It is manifest throughout the testimony, and the question was fairly and carefully submitted to the jury whether the lumber in question was No. 3 or No. 4 siding, and they have found it was No. 4 upon what seems to us ample testimony to that effect. This disposes of all the assignments of error, except the third and fourth, and in them there is no merit.

Judgment affirmed.