# Operators Fuel Agency *v.* Eastern Fuel Company, Appellant.

*Vendor—Vendee—Sales—Warranty—Breach of.*

In an action of assumpsit to recover a balance alleged to be due on account of the purchase price of coal sold by the plaintiff to the defendant, it appeared that the parties had entered into a written contract for the sale of thirty-six carloads of "Classified Pool 60 Coal." It was conceded that the construction of the term "Classified Pool 60 Coal" was for the court.

As the term "Classified Pool 60 Coal" denoted in the coal trade a certain particular kind of coal, it was error to enter judgment for the plaintiff where there was evidence that the coal delivered had not corresponded to that standard.

598, (1924).] Syllabus—Assignment of Error.

When the defendant purchased "Classified Pool 60 Coal" he was entitled to receive a gas coal of a certain size which would measure up to the standard and grade known by that designation.

Where an article is sold by a descriptive name, well understood as designating a commodity of a particular kind or character, it is, if relied on by the buyer, a warranty that the article is of the specified kind and character.

A difference in quality may amount to a difference in kind.

The general rule is that there is no implied warranty as to quality in the case of a sale of goods by description, but where the description of the goods imports grade or quality a warranty that they are of such grade is implied.

An implied warranty that the material was of the kind ordered is one which survives the acceptance of the goods, and the purchaser may thereafter sue for the breach of warranty even if the defects are known at the time the commodity was accepted and used.

Argued April 30, 1924. Appeal, No. 138, April T., 1924, by defendant, from judgment of C. P. Allegheny Co., April T., 1922, No. 240, on verdict for plaintiff in the case of Operators Fuel Agency v. Eastern Fuel Company. Before HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Assumpsit for goods sold and delivered. Before CARPENTER, J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff in the sum of $1,756.13 and judgment thereon. Defendant appealed.

*Errors assigned* were refusal of offer to prove that the coal delivered was not "Classified Pool 60 Coal" and in directing a verdict for plaintiff.

*Lee C. Beatty,* and with him *Lawrence P. Monahan,* for appellant.—There was an implied warranty that the coal would correspond to the description: Sales Act of May 19, 1915, P. L. 543, section 14; 14 A. Corpus Juris 1428; Samuel v. Steel Co., 264 Pa. 190.

The purchaser was entitled to receive the exact kind of coal ordered, and the acceptance did not relieve the seller from liability for the loss arising from the breach: Benjamin on Sales, (6th ed.), 683; Joseph v. Richardson, 2 Pa. Superior Ct. 208; Samuel v. Steel Co., 69 Pa. Superior Ct. 605.

*Lawrence D. Blair,* and with him *Moorhead & Knox,* for appellee.

OPINION BY GAWTHROP, J., July 2, 1924:

This is an action of assumpsit to recover a balance alleged to be due on account of the purchase price of coal sold by plaintiff to defendant. By two written confirming orders dated April 15, 1921, plaintiff agreed to sell to defendant, and defendant agreed to buy, thirty-six carloads of "Classified Pool 60 Coal" f. o. b. mines, with certain provisions as to consignment price, freight, etc., which are not material to the questions before us. Pursuant to contracts plaintiff shipped thirty-six carloads of coal to the consignee at the point named. Defendant, without inspection, sold and reconsigned the coal to the Fall River Gas Works Company located at Fall River, Massachusetts. The latter company, upon the arrival of the coal, caused an inspection and examination of it to be made and rejected the same, because it was not of the standard required in its contract of purchase with defendant. It promptly notified defendant of this fact and defendant caused an examination and analysis of the coal to be made and in turn notified plaintiff that the coal was not "Classified Pool 60 Coal," and called upon it to take the coal off its hands, which plaintiff refused to do. Thereupon, defendant resold the coal to the Fall River Gas Works Company at a price of seventy-five cents per net ton less than the amount which that company in its original agreement had promised to pay defendant for the coal which it ordered. Defendant subsequently remitted to plaintiff the purchase price of

the coal under the contract, less the sum of $1,567.98, the loss alleged to have been sustained by defendant, because the coal did not correspond with and was inferior in quality to the kind of coal purchased from plaintiff. Defendant in its supplemental affidavit of defense set up a breach of warranty by way of recoupment in diminution of the price of the coal. This course is authorized by Section 69 of the Sales Act of 1915, P. L. 543.

The controversy in this case turns upon the question whether or not the coal shipped by plaintiff to defendant was "Classified Pool 60 Coal." The statement of claim alleged that the term "Classified Pool 60 Coal" meant coal mined and shipped from coal mines classified by the "Tidewater Coal Exchange, Incorporated," as "Pool 60" or "Consigned Pool 60." The affidavit of defense denied that the coal shipped was "Classified Pool 60 Coal," and averred that the term "Classified Pool 60 Coal" meant coal of a certain kind and quality and having certain properties inter alia, viz., coal that does not exceed $1\frac{1}{4}\%$ in sulphur and analyzes approximately 7% in ash, and by reason thereof is so classified by the Tidewater Coal Exchange, Incorporated. Counsel for plaintiff concede in their counter-history of the case that the only question in issue under the pleadings was as to the construction of the admittedly descriptive term "Classified Pool 60 Coal."

At the trial there was no dispute between the parties as to the evidence by which the proper construction of the term "Classified Pool 60 Coal" should be determined. That evidence was plaintiff's exhibit 1, which was a pamphlet containing a list of the classification of mines, a description of pools and the rules and regulations in reference to shipments of coal as made by the Tidewater Coal Exchange, Incorporated. The classification is well known in the coal trade. The Tidewater Coal Exchange was organized during the late war for the purpose of facilitating the movement of coal at Tidewater Piers. It

was continued after the war and the Tidewater Coal Exchange was succeeded by the Tidewater Coal Exchange, Incorporated. By this exhibit "Pool No. 60" is described as follows: "Westmoreland Irwin Basin & Youghiogheny Low Sulphur Illuminating Gas Coal ¾″ Lump." It appears also by this exhibit that the exchange specifically reserved to itself the right of inspecting and classifying all coal shipped from classified mines upon its arrival at Tidewater Piers; that it was the duty of the commissioner and deputy commissioner of the exchange to protect the quality of coal shipped to the exchange through a system of inspection and analysis, and they may at any time suspend shipments to any pool when in their judgment the quality or preparation of such coal is below the proper standard. The shipment of any particular lot of coal to the exchange from mines which had been classified by the exchange was not of itself sufficient to secure acceptance of the coal in any particular pool. All coal shipped to the exchange, regardless of the pool in which the mines producing it had been classified, was subject to, and was accepted only upon, inspection. It clearly appears from this exhibit that "Classified Pool 60 Coal" is coal of a certain kind, namely, a low sulphur illuminating gas coal as distinguished from steam coal and other kinds of coal. Plaintiff's sales manager testified that "Pool 60" was of a certain quality and grade; that it was highly volatile and low in sulphur; and that the purpose of designating the pool was to classify certain coal,—gas coal, steam coal, semi-bituminous coal, and smokeless coal. The vice-president of the company testified that the words "low sulphur coal" in the description of Pool 60, meant coal that will analyze from 1% to 2½% in sulphur. Under this evidence, as the learned counsel for plaintiff concede, the construction of the term "Classified Pool 60 Coal" was for the court. The learned trial judge ruled that the term described a "district" and not a "quality," and that, as it was admitted that the coal shipped came from mines which had

been classified by the Tidewater Coal Exchange, Incorporated, "Pool 60," the thing sold corresponded with the description and the plaintiff was entitled to a directed verdict. With that we cannot agree. The classification of the mines is not the test. Under the theory a shipment of "Pool 61" coal would have been a compliance with the contract. The only difference between Pool 60 coal and Pool 61 coal is that the former must pass through a $3/4''$ screen and the other is what is known as "run of the mine." Such a construction is not tenable. It reads out of the contract the plain meaning of the term "Classified Pool 60 Coal" as described in the pamphlet compiled by the Tidewater Coal Exchange, Incorporated and offered in evidence by plaintiff. When defendant purchased "Classified Pool 60 Coal," it was entitled to receive a low sulphur illuminating gas coal of a certain size, which would measure up to the standard and grade set by the exchange for "Pool 60 Coal." It is of no importance here that the coal was not shipped through the exchange, but went directly from the seller to the buyer. It was proper for defendant to present evidence that the coal delivered was a high sulphur coal and a nonilluminating gas coal for the purpose of proving that it did not correspond with the description by which it was sold and was a different kind of coal. The offer to prove these facts was objected to and the evidence was excluded. This amounted to reversible error.

It is urged by counsel for plaintiff that defendant's effort to recover its counterclaim is on an implied warranty as to the quality of the coal purchased. They contend that under all our authorities there is no implied warranty as to the quality of goods sold in the case of a sale by description. It must be conceded that that is the general rule, but where the description of the goods imports grade or quality, a warranty that they are of such grade is implied: Holloway v. Jacoby, 120 Pa. 583; 35 Cyc. 404. It is stated in 24 Ruling Case Law, p. 171: "It seems to be generally held that where an article is

sold by a descriptive name well understood as designating a commodity of a particular kind or character, it is, if relied on by the buyer, a warranty that the article is of the specified kind or character." That a difference in quality may amount to a difference in kind was decided by our Supreme Court in Whitehall Mfg. Co. v. Wise Bros., 119 Pa. 484. In that case the article which defendants ordered was a car of "No. 3 siding." The defense set up against plaintiff's claim was that the lumber delivered was "No. 4 siding." The complaint of the plaintiff in error in the appellate court was that the difference between No. 3 siding and No. 4 siding was one of quality only and that there was no implied warranty of quality. The Supreme Court pointed out that, if the siding delivered was so different in quality as to place it in grade No. 4, it amounted to a difference in kind which would constitute a breach of the implied warranty that the article should be of the kind ordered. In the present case the description of the coal was one which was understood in the coal trade as designating coal of a particular kind. A failure to deliver that kind of coal amounted to more than a breach of warranty as to quality. It was a delivery of a different kind of coal.

Counsel for plaintiff also attempt to justify the court's refusal to permit defendant to prove that the coal delivered was not a low sulphur illuminating gas coal, on the ground that there was no allegation in the affidavit of defense that plaintiff was guilty of a breach of warranty in failing to deliver low sulphur illuminating gas coal. We see no merit in this contention. The affidavit of defense contained an averment that the coal delivered was not "Classified Pool 60 Coal," but coal of an inferior kind and quality. This was a sufficient allegation of plaintiff's breach of contract for which defendant was endeavoring to recoup its loss. It was not necessary to aver specifically that this constituted a breach of implied warranty to deliver the kind of coal ordered. The law is settled in this State that an implied warranty

that the material was of the kind ordered survives the acceptance of the goods and the purchaser may thereafter sue for the breach of warranty, even though the defects are known at the time the commodity was accepted and used: Samuel v. Steel Co., 264 Pa. 190.

The assignments of error are sustained, and the judgment is reversed with a venire facias de novo.