201      405
26 SC ²510

## Louis Werner Saw Mill Company *v.* Ferree, Appellant.

*Contract—Delivery—Carrier.*

Where a purchaser of lumber asks a seller to quote his "lowest delivered prices," and it appears that the goods were to be delivered at a point 1000 miles away, and it also appears that the freight was to be paid by the consignee who would deduct it from the delivered price, the words "lowest delivered prices" are used by the parties merely to fix a price; and delivery to the railroad company is a delivery to the purchaser. Such a case does not come within the rule that "where goods are sold to be delivered by the vendor to the vendee at a certain place, and are by the fault of the carrier not so delivered, the carrier being the agent of the vendor, the latter is responsible for neglect."

*Contract—Sale—Acceptance of goods —Delay in making complaint.*

Where lumber is being delivered during the period of seven weeks and is unloaded by the purchaser, who has a full opportunity to inspect every piece of it, and the lumber is used by him in a building operation, without any complaint of its condition made either to the seller or the carrier, it is too late when the purchaser is called upon to pay for the lumber to allege its damaged condition as a defense.

*Contract—Sale—Quality.*

Where the price of goods is fixed by a contract and the quantity and grade are furnished and accepted without complaint, the buyer must pay the price, even though the quality be inferior.

*Contract—Sale—Delivery—Delay.*

Where the seller of lumber agrees to make shipments "with reasonable dispatch," and the first lot is shipped within ten days thereafter, and the remainder in thirteen cars rapidly follows and the whole is delivered within seven weeks, and no complaint is made during this time, of negligence in delivery, the seller will be deemed to have substantially complied with the contract in prompt shipment.

Argued Nov. 6, 1901.   Appeal, No. 136, Oct. T., 1901, by

defendant, from judgment of C. P. No. 1, Allegheny Co., Dec. T., 1900, No. 125, on verdict for plaintiff in case of Louis Werner Saw Mill Company v. C. B. Ferree, trading as C. B. Ferree & Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown and Mestrezat JJ. Affirmed.

Assumpsit for lumber sold and delivered. Before Collier, J.

At the trial it appeared that defendant purchased from plaintiff thirteen carloads of lumber which he used in constructing thirty-five houses in Westmoreland county. The terms of the contract, together with the circumstances of the delivery of the lumber, are stated in the opinion of the Supreme Court.

The court charged in part as follows:

Now, it being admitted that the lumber was bought, at the prices stated, and that it was shipped, received and used, the plaintiff has made out what is called a prima facie case. That is, he is entitled to a verdict for the amount claimed, $2,204.83, with interest, unless the defendant has satisfied you of a good defense. So that you will understand the position, before we come to the evidence, under the admitted facts, the plaintiff is entitled to your verdict for $2,204.83, with interest, because the defendant got and received his goods, unless the defendant satisfies you by the weight of the evidence, of a defense, or of some good reason why he should not pay the whole of it. Bearing that in mind, and remembering that the plaintiff is entitled to your verdict unless the defendant shows you some good reason why he should not pay it all, you then examine the defendant's testimony.

The defendant says: I did get the lumber and used it; I received and used it. We choose to do that, but we say we ought not to pay for it all, because it was not good. It was not good lumber. The defendant alleges part of it was green; that it was mouldy and wet, and was not worth anything like what they were charged for it. He offered some evidence to show what it was worth, and made it out much less than the original price.

[This allegation raises another question of law, which you

probably have not heard much about except through the counsel. The burden being on the defense, they must show you, not that it was wet and soggy when they got it, because that would not do. You business men all know that if your goods are shipped on a railroad, the moment they are taken and shipped by the railroad, the railroad is responsible if they spoil the goods on the way, and not you.] [6] The merchant, when he receives his goods, if they are bad, goes immediately and notifies the freight agent of the fact. An investigation is made to ascertain what is the matter, and whether the goods got spoiled and injured in transit. [The burden is upon the defendant to satisfy you that at the time this lumber was shipped it was bad. He could not set that up as a defense against a man who ships good goods, and the railroad spoils them, because the law gives a remedy against the railroad.] [7]

[The defendant is bound to show you that it was bad lumber at the time it was shipped.] [8] He alleges he has done that, because some of the witnesses testify that part of it was green ; that is, that it was made out of fresh trees ; that it took it three or four weeks to come here, and if it came here green it must have been green when it was put into the car. He alleges that that is evidence from which you may infer that this lumber at the time it was shipped was green, and not what is called dry lumber. That is the point in this case, and you will examine it carefully.

Were these goods green and spoiled when they were shipped, or did they get wet, bad and mouldy in the railroad company's care, while they were four or five weeks on the road coming here ? Upon this question, on the side of the defendant, you have nothing but the fact that some of the witnesses say it was green, to show that it was shipped green. On the other hand, you have the freight bills of the railroad, where they charge for dry lumber and wet lumber by weight, in every one of the cars. Of course railroads charge more for the heavy than for the light, and the evidence here seems to show that every one of these cars was shipped as dry lumber, and charged freight on as dry lumber. Then they have some witnesses who saw the lumber at the time it was in the southwest, and they all say it was kiln dried lumber. That evidence has been commented upon by both sides, and it is for you to consider in determining the question.

[You will remember that the defendant must satisfy you that it was bad when it was shipped. It is not for the man that ships the lumber, which another man gets and uses, to show in the first place that it was good. It is for the other side to show it was not, and then he answers it. Has the defendant satisfied you that this lumber that he got was bad, green and spoiled, when it was shipped, or was it spoiled after it came into the carrier's hands? If it was the railroad's fault, then his remedy is there, and not against the man who ships honest goods in the first place. Such is the commercial law, that every business man on the jury understands.

If you come to the conclusion that the defendant has not satisfied you, by the weight or strength of the evidence, that his contention is true, and that this lumber was bad when it was shipped, then he, unfortunately has not made out his case.

If there is any damage to him he must apply to the railroad, and make them pay for what damage they caused, not taking it off the man who shipped the lumber in good order.] [9]  If, on the other hand, notwithstanding the evidence on the part of the plaintiff, you should come to the conclusion that the strength and weight is with the defendant; that the goods were bad, were green and spoiled when they were shipped, then the next question would be as to what damages he would have a right to set off against the claim of the plaintiff. . . .

The evidence is contradictory, and you will have to determine it. [You will remember, in the first place, that the plaintiff is entitled to your verdict for the whole amount of his claim, $2,204.83, with interest, unless the defendant has satisfied you that these goods were damaged when they were shipped—when they were shipped, and not after they were shipped.]  [10]

Verdict and judgment for plaintiff for $2,204.83. Defendant appealed.

*Error assigned* among others was (6–10) above instructions, quoting them.

*W. T. Tredway*, for appellant.—The general principle of law as laid down by the court in his charge to the jury is correct, that in the absence of a contract, delivery to a common carrier is delivery to the purchaser. But this rule does not apply where

by virtue of the contract between the vendor and his consignee, the goods did not become the property of the consignee, and he was not at any risk in regard to them until they absolutely reached him: Braddock Glass Co. v. Irwin & Co., 153 Pa. 440; McNeal v. Braum, 53 N. J. Law Jour. 617; Sneathen v. Grubbs, 88 Pa. 147; Taylor v. Turner, 87 Ill. 296; Devine v. Edwards, 101 Ill. 138.

*R. B. Ivory*, for appellee.

OPINION BY MR. JUSTICE DEAN, January 6, 1902:

The appellants, defendants in the court below, residents of Allegheny county, in March, 1900, contracted with plaintiff, a corporation of the state of Missouri, for the delivery of all the yellow pine lumber needed for the construction of thirty-five houses for the Pittsburg Coal Company. The contract is based on correspondence between the parties. The first letter is from Ferree & Company to the sawmill company dated Pittsburg, March 10, 1900. It begins by enumerating the kinds, sizes and quantity, points of delivery, and then makes this request: " Please quote us your lowest delivered prices on any or all of the stock, if you could ship at once." On March 13, three days afterward, the sawmill company replied, quoting prices per M at points of delivery, and saying they "could make shipments with reasonable dispatch." Ferree & Company on March 15 then replied, that as speedy shipment was much to be desired, they would wait a day or two before placing the whole order and then they might divide it by giving part to other lumber dealers; further, as they would have it shipped direct to the coal company, "the freight would be paid by that company." Three short letters then followed between the parties, but they have no bearing on this controversy. On March 20, Ferree & Company mailed an order for the full amount of the lumber at the delivered prices heretofore quoted by the sawmill company, which, on the 22d of the same month was accepted by the sawmill company, who March 31 commenced shipments. There were altogether thirteen cars shipped by the seller and received by the buyer, covering in time a period of about seven weeks. No complaint was made of the quality of the lumber at the time it was re-

ceived, nor until after it had been used and the bills presented. The amount of the bills was $2,490.24. The purchaser, then alleged, that the lumber was wet, soggy and unfit for use, and that he only accepted it because under his contracts it was too late to purchase and substitute better lumber. He claimed a reduction of about one third the contract price. The court submitted the evidence to the jury who found for the plaintiff the full amount of its claim less about $200, and we have this appeal by the defendant, who assigns for error several of the court's rulings on evidence, which we shall advert to hereafter, and also the following instruction in the general charge : " You will remember that the defendant must satisfy you that it was bad when it was shipped. It is not for the man that ships the lumber that another man gets and uses, to show that in the first place it was good. It is for the other side to show that it was not and then he answers it. Has the defendant satisfied you that this lumber which he got was bad, green and spoiled when it was shipped, or was it spoiled after it came into the carrier's hands ? If it was the railroad's fault, then his remedy is there, and not against the man who ships honest goods in the first place." This instruction is practically what is complained of by appellant in his sixth, seventh, eighth, ninth and tenth assignments of error.

Appellant argues, that under the law as announced in Braddock Glass Co. v. Irwin & Co., 153 Pa. 440, and all our cases where goods are sold to be delivered by the vendor to the vendee at a certain place and are by the fault of the carrier not so delivered, the carrier being the agent of the vendor the latter is responsible for the neglect. The law is sound enough and we do not attempt to modify it. But this contract is in writing to be construed by the court. What within the meaning of the parties, was the undertaking of the vendor? We think the vendee only stipulated for a price delivered at certain points and that is all the vendor undertook to fix. The first letter of Ferree & Company says: "Please quote us your lowest delivered prices " at Jacobs Creek, Moon Run, and Whitsett. It will be noted that the point of shipment was Missouri and the destination near Pittsburg, more than a thousand miles east. The consignee did not probably know and possibly could not ascertain the rate of freight; the shipper could easily know

for he made the contract with the railroad; hence, the consignee stipulated for a delivered price, beyond which, no matter what the route or how many connecting roads carried, he would not be bound to pay. Then notice the remark in Ferree & Company's letter to the sawmill company of March 15, "as this will be shipped direct to the Coal Trust, freight being paid by them, and stock unloaded by them, it makes no difference if the stock was all shipped in one day." The freight was not to be prepaid at point of shipment by the consignor but at destination by the consignee, the coal company, who would deduct it or receive a credit on the delivered price already quoted, even if the amount should greatly reduce the price at the mill which the vendor expected to receive. The vendee was fully protected by his contract against any enhancement of the quoted cost to him. And we think that was all that was intended by the parties by the language, "Please quote us your lowest delivered prices;" it was to fix a price beyond which no charge could be made against the vendee either by shipper or carrier, no matter what the freight, therefore, a delivery to the railroad company was a delivery to the purchaser. The contract would have been susceptible of a different construction, if it had been a request for the lowest delivery prices, freight prepaid to the points named; but the vendor had nothing to do with the freight, except, to ascertain and use it as a guide in fixing the price of lumber at the mill, taking all the risk of change in schedule prices or mistakes. So that if the lumber was damaged in transit, the party answerable to appellant was his agent for delivery, the railroad company.

But concede, as argued by appellant, that the railroad was alone answerable to the sawmill company, what duty was owing by the purchaser, Ferree & Company, to the sawmill company? Clearly that of prompt notification, that the lumber was damaged. Now it is admitted that these cars as they arrived, during a period of seven weeks were unloaded by the purchaser; that he had full opportunity to inspect every piece of the lumber; nevertheless, he used it all in his contract and made no claim for damage until called upon by the sawmill company to pay; then the time for it to make claim on the carrier was gone; the lumber had been used; had been built into the houses. We hold that even if the railroad, under this contract was the agent of

the vendor, still to enable the latter to assert its rights promptly, it was the duty of the purchaser to immediately notify it of the alleged damaged condition of the lumber, and failing to do so before using it, it was too late to set up a claim against the sawmill company; therefore, the instruction did defendant no harm. If a consignee accepts and uses without complaint, goods damaged in transit, except in very rare cases of which this is not one, his remedy against the carrier is gone.

But it seems to us, the evidence was in any view of it insufficient to defeat plaintiff's claim. It was admitted the lumber had been received and used without objection; it was not denied that the quantity and grade were such as called for by the contract; the quality alone was disputed. But we have more than once decided, that where the price of goods is fixed by contract, and the quantity and grade are furnished and accepted without complaint, the buyer must pay the price, even though the quality be inferior. See Fraley v. Bispham, 10 Pa. 320, Whitaker v. Eastwick, 75 Pa. 231, Shisler v. Baxter, 109 Pa. 447, and Whitehall v. Wise, 119 Pa. 484. Therefore, under the undisputed facts the law is clearly with the plaintiff.

We do not concur in the argument, that there was a violation of contract by plaintiff in failing to ship promptly. The plaintiff in reply to letter of March 20, says to appellant, "We could make shipments with reasonable dispatch." The first lot was shipped within ten days thereafter, the whole thirteen cars rapidly followed, and no complaint was made during the interval, of negligence in delivery. We think under the evidence there was a substantial compliance with the contract, in prompt shipment.

In the view we take of the law of the contract, appellant's assignment of error to the court's rulings on evidence become immaterial.

All the assignments of error are overruled and the judgment is affirmed.