Murphy *v.* Beverly Hills Realty Corp., Appellant.

184 

Argued October 21, 1929. 

 Be-
fore Porter, P. J., Trexler, Keller, Linn, Gawthrop,
Cunningham and Baldrige, JJ. 

*Clarence L. Walker*, and with him *Wm. Y. C. Ander-
son* and *Daniel W. Simpkins*, for appellant.

*Benjamin R. Simons*, for appellee.

Opinion by Baldrige, J., January 29, 1930:

The plaintiff in answer to an advertisement in a
newspaper for land salesmen called at the Harris
Building in Philadelphia, where he was employed to
sell lots located at Beverly Hills on a commission of
five per cent. He continued this work for a period of
two years, during which time he made seven sales. He
received commissions on five of these sales; on the
other two transactions commissions were not paid.
Plaintiff brought this suit alleging that his contract of
employment was with the defendant corporation. The
defendant denied being a party to any contract with
the plaintiff and alleged that Diggins, individually, em-
ployed the defendant. The case was tried without a
jury and the court found for the plaintiff on the ground
that the corporation permitted Diggins to be held out

as its agent in the sale of land and that the employment of the plaintiff was within the apparent scope of his authority. This appeal followed.

On the door of the office where the plaintiff was employed, and on the stationery, appeared "Beverly Hills Realty Company, B. J. Diggins, Developer."

When a sale was made by the plaintiff, a cash payment was required to be made and a receipt was given in the following form:

"BEVERLY HILLS REALTY COMPANY

B. J. Diggins, Developer

Suite 305 Harrison Building

S. W. Cor. 15th and Market Streets

Philadelphia, Pa. Telephone Spruce 10184

Received from Pearse W. Boyer the sum of twenty-five and ...... 00/100 Dollars, being the first payment on formal agreement to be entered into for the purchase of Lots 49-50 10 ft. 51. Block E "Beverly Hills" upper Darby Township, Delaware County, Pennsylvania, from Beverly Hills Realty Company. (Subject to owners approval.) J. J. Murphy, Salesman.

First payment must accompany application. Salesmen are authorized to receive such first payment but all other payments must be made to Beverly Hills Realty Company (B. J. Diggins, Developer), at above address."

Thereupon an agreement of sale was entered into between the Beverly Hills Realty Company and the purchaser of the lot, which agreement cited, inter alia, as follows:

"Second. That all sums of money payable to the party of the first part hereunder, shall until further written notice, be paid at the Philadelphia office of the party of the first part, and the receipt of the duly au-

thorized agent of the party of the first part shall be sufficient discharge therefor.''

These agreements were signed by the Beverly Hills Realty Company, Daniel W. Simkins, President, attested by Alfred R. Lindsey, Secretary, and ''approved and delivered by B. J. Diggins, Agent.'' A deed was executed and delivered when the payments were completed. Pass books were furnished to the purchaser of a lot which bore the name of the Beverly Hills Realty Company, B. J. Diggins, Developer, and credits were placed therein as the purchaser made payments. Plaintiff from time to time met Mr. Simkins, the president of the company, on the premises, who inquired of the plaintiff respecting the progress being made in the selling of the lots.

The defendant contends (a) that it was incumbent upon the plaintiff before entering into a contract to learn the scope of Diggins' authority; that he was not authorized to employ the plaintiff for the Beverly Hills Realty Company, and that there was never any ratification of the contract; (b) that the court erred in not permitting the offer of evidence of the contract between the defendant company and Diggins, which provided that the company was to pay for the stationery, blanks necessary for the transaction of business, rent, etc., and he was to receive a commission of twenty per cent on sales as his sole compensation and was to pay therefrom all agents' commissions, advertising, and other selling or collecting expenses.

Corporations are necessarily required to conduct their business through agents and they are bound by the acts of their representatives within the apparent scope of the business with which they are entrusted: Griswold v. Gebbie, 126 Pa. 353.

''Apparent authority,'' as used in this connection, has been defined to be ''such authority as a reasonably prudent man, using diligence and discretion, in view

of the principal's conduct, would naturally suppose the agent to possess. The apparent authority of an agent which will be sufficient to bind the principal for acts done thereunder is such authority as he appears to have by reason of the actual authority which he has": Winter v. Iron City Stamping Co., 51 Pa. Superior Ct. 11.

It was Diggins who was held out to the public as the representative of the defendant. It was his name that was given prominence at the office of the company and on the stationery, receipts, agreements, etc. It was he who approved the agreements of sale. He was the "developer," which is generally understood to mean in an undertaking of that character the one who is in general charge of the advertising and the selling of lots. One would naturally and reasonably infer that his authority extended to the making of contracts and incurring whatever expenses were necessary in connection with the improvement and disposal of defendant's property.

"If the principal holds out the agent to the world, as a general agent in the transaction of his business, any contract made by him, within the scope of that business, will bind the principal; although there may be, as between the principal and agent, a restriction upon the general authority of the latter; if the person with whom the contract is made has no notice of such restriction": Williams v. Getty, 31 Pa. 461.

There was sufficient evidence for the court's holding that the plaintiff was justified in concluding that Diggins was acting within the scope of his apparent authority in employing him. There is no evidence whatever that the plaintiff had any express or constructive notice that Diggins was acting beyond his authority.

We are of the further opinion that it was not a fatal error for the court to exclude the testimony offered upon the part of the defendant to prove that

Diggins was individually required to pay any agents he employed to sell lots. It must be conceded that if there had been any conflict of testimony in regard to the real or apparent authority, the refusal to admit the evidence offered would have been more serious: American Life Ins. & Trust Co. v. Shultz, 82 Pa. 46; but as was said in Wachter v. Phoenix Assurance Co., 132 Pa. 428 (440), "All the essential facts are clearly and conclusively established by uncontroverted evidence, part of which was introduced by the company itself. When the facts are admitted, or established beyond all controversy, as they are in this case, there is no necessity for submission to a jury. The thing becomes a province of the court to declare the law applicable to such facts."

The plaintiff's case did not depend upon oral testimony, as the written evidence representing the acts and admissions of the defendant shows conclusively that the defendant company held out Diggins as its general agent; there was no controversy as to what defendant's actions were in that respect. The admission of the evidence tending to prove the private agreement limiting Diggins' authority could not have relieved the defendant from responsibility for Diggins' action and this plaintiff's right to a verdict.

The assignments of error are overruled. Judgment is affirmed.