O'Donnell *v.* Union Paving Company, Appellant.

Argued December 11, 1935.

Before KELLER, P. J., CUN-NINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*John Kennedy Ewing, 3d,* of *Saul, Ewing, Remick & Saul,* with him *Frank X. York,* for appellant.

*George A. Shutack,* for appellee.

OPINION BY JAMES, J., January 31, 1936:

The plaintiff sued in assumpsit on an oral agreement with defendant's superintendent whereby plaintiff was employed to excavate dirt, stone, etc., with a gas-air shovel at an hourly rate of $5. Upon the trial defendant's point for binding instructions was refused and a verdict rendered in favor of the plaintiff; defendant's motion for judgment non obstante veredicto was refused; judgment entered on the verdict, and this appeal followed.

Appellant is a corporation engaged in the contracting business with its principal office in the City of Philadelphia. In November 1932, it entered into a contract with the Commonwealth of Pennsylvania to construct a highway in Penn Forest and Kidder Townships, Carbon County, Pa. Later it employed, by written agreement, Morrissey Brothers to perform the excavating necessary to be done. Several weeks before December 28, 1932, one of the Morrissey Brothers came to the plaintiff to rent his shovel. They agreed on the price of $5 per hour, but plaintiff refused to send the shovel until he knew who was good for the payment. On December 28, Murtha P. Quinn, superintendent of the defendant, went to plaintiff's place of business and concerning the visit plaintiff testified as follows: "A. Mr. Quinn came to my place of business, and he said, 'O'Donnell, what is the matter that the shovel ain't out on the job?' And I said, 'Mr. Quinn, I can't send the shovel out on your job until I know who will pay me.'

He said, 'You get the shovel out there and the Union Paving Company will pay you for it,' and we agreed on $5 an hour for excavating. ...... A. Mr. Quinn came there and he was all 'het up,' and he said, 'If you don't get the shovel out, the job will be shut down on account of not having the necessary shovels on the job.' The State would shut it down because you had to have so many cubic yard excavators. Q. Did he say it was necessary to have that shovel— A. It was necessary to have my shovel, that would complete the specifications." The same day the shovel was shipped to where the road work was in progress. Work with the shovel began on January 2, 1933, and was finished on February 3, 1933. Plaintiff visited the job on several days and saw Mr. Quinn directing the work with Mr. Doherty, assistant superintendent. Plaintiff knew Quinn was superintendent of the Union Paving Company and had full charge of the job and had known Quinn to have been superintendent in complete charge of the Abbott Street job in Lansford for the defendant company. Defendant's contention was that the work was performed under contract with Morrissey Brothers and that Quinn had no authority to enter into the agreement for the hiring of the shovel. The secretary and treasurer of the defendant's company testified that Quinn was the superintendent of construction on various contracts; was in charge of the work being done to see that the work was properly laid out and properly proceeded with, but had no authority to hire machinery or shovels for operation unless ratified by written agreement by the proper officials.

In view of the verdict of the jury, the sole question presented is whether the record discloses sufficient evidence to establish the finding that the hiring of the shovel was within the apparent scope of the superintendent's authority.

"The liability of the principal is not limited to such

acts of the agent as are expressly authorized or necessarily implied from express authority. All such acts of the agent as are within the apparent scope of the authority conferred on him are also binding upon the principal, apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing": 21 R. C. L., p. 854 §34. "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct would naturally suppose the agent to possess": 2 C. J. 573.

" 'If the principal holds the agent out to the world as a general agent, in the transaction of his business, any contract he would make within the scope of that business would be binding on the principal, although there might be, as between the principal and agent, a restriction upon the general authority of the latter, if the person with whom the contract was made had no notice of such restriction' ": Williams v. Getty, 31 Pa. 461.

"As to third parties, the liability of the principal for the acts of his agent is measured not merely by the authority actually given, but by the authority essential to the business of the agency, and the authority held out by the principal as possessed by the agent, or the apparent authority which he permits the agent to assume. No express terms are required to define the agent's powers. The relation of principal and agent implies a grant of the powers necessarily incident to the purposes of the agency, or which, by established usage, may properly be employed in carrying out those purposes. In brief, the agent has the authority of the principal in all matters within the scope of the agency, and, beyond this, all powers which the principal has,

either directly or by a course of dealing, held him out to the public, or to those dealing with him, as possessing": Lauer Brewing Co. v. Schmidt, 24 Pa. Superior Ct. 396.

Corporations are necessarily required to conduct their business through agents and they are bound by the acts of their representatives within the apparent scope of the business with which they are entrusted, and apparent authority is such authority as a reasonably prudent man using diligence and discretion, in view of the principal's conduct would naturally suppose the agent to possess. The apparent authority of an agent which will be sufficient to bind the principal for acts done thereunder is such authority as he appears to have by reason of the actual authority which he has: Winter v. Iron City Stamping Co., 51 Pa. Superior Ct. 11; Murphy v. Beverly Hills Realty Corp., 98 Pa. Superior Ct. 183.

"Acts are interpreted in the light of ordinary human experience. If the principal puts one into, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with one in that position is justified in inferring that the person in question possesses such authority, unless the contrary is then made known. What such authority is, is a question to be determined from the facts like other similar questions": Restatement of the Law of Agency, §49, p. 119.

In the case of Bayne v. Proctor & Gamble, 87 Pa. Superior Ct. 195, 200, in the opinion of this court, by President Judge KELLER, where many authorities dealing with the present question were cited, the following general rule may be found: "When a corporation intrusts a manager with the general supervision of a particular branch of its business, it invests him with

the power óf a general agent coextensive with the business intrusted to his care ...... and is bound by his contracts on its behalf made within the apparent scope of his authority ...... And where the authority of such an agent is not limited in writing, the scope of agency is a question for the jury." This general rule was cited with approval in C. D. Brown & Co., Inc. v. Standard H. Co., 301 Pa. 543, 152 A. 557; Edwards & Strong v. Power Gasoline Co., 109 Pa. Superior Ct. 252, 167 A. 487; Groda v. American Stores Co., 315 Pa. 484, 488, 173 A. 419; Bowman v. Press Publishing Co., 316 Pa. 531, 175 A. 483.

Under the terms of the contract with the Commonwealth, the appellant was obligated to furnish and deliver all the materials and to perform all the work and labor in the improvement of the highway, and although for its own purpose, it saw fit to sublet certain portions of the work to Morrissey Brothers, it was not thereby relieved from its original agreement. In his capacity as superintendent in charge of the job, in pushing and expediting the work required to be done by Morrissey Brothers, he was not alone serving Morrissey Brothers, but was advancing and promoting the interests of his own employer, the Union Paving Company. The failure of the subcontractor to perform its work would be regarded as the failure of the Union Paving Company. He had been placed in charge to see that the work was properly laid out and properly proceeded with and in the performance of these duties was impliedly authorized to use all reasonable means in accomplishing these ends. The use of a shovel, in the performance of this character of work, would undoubtedly be recognized as a usual and proper method. In the use of the term "superintendent" we see no reason for distinction in applying the rule applicable to that of a manager, as the term is frequently used synonymously. To all intents and purposes the apparent scope of the authority

which the superintendent possessed would have been as broad as if his designation had been that of manager.

Under all of the testimony, the jury was clearly warranted in finding that the hiring of the shovel was within the apparent scope of the superintendent's authority.

The assignments of error are overruled and the judgment is affirmed.