## W. C. Downey & Co., Inc., *v.* Kraemer Hosiery Company, Appellant.

554

Argued April 24, 1939.

Before KELLER, P. J.,
CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES
and HIRT, JJ.

*Calvin F. Smith,* of *Smith & Paff,* with him *Francis Johns Gafford,* for appellant.

*William A. Frack,* of *Chidsey, Maxwell & Frack,* with him *J. Lawrence Davis,* for appellee.

OPINION BY BALDRIGE, J., July 13, 1939:

Plaintiff brought this suit in assumpsit to recover $825.12, with interest, for 300 bundles of wire ties consigned to the defendant, 50 of which were shipped on July 24, 1934, and the remainder on August 2, 1934. An affidavit of defense was filed denying liability, on the ground that the orders were not authorized nor the goods received by the defendant. The parties, by agreement in writing, dispensed with a trial by jury, as provided by the Act of April 22, 1874, P. L. 109 (12 PS §689). Plaintiff obtained a judgment, from which this appeal was taken.

It seems necessary, for an understanding of the issues involved, to relate in some detail the underlying facts, which are not in serious dispute. This controversy is, largely, if not entirely, to the application of appropriate legal principles thereto.

Arthur G. Schmidt, now deceased, together with his brother, Frank H. Schmidt, had been engaged in the manufacture of hosiery in Nazareth, Northampton County. In 1907 he, his brother, brother-in-law, father-in-law, and an old trusted employee formed the Kraemer

Hosiery Company. Arthur G. Schmidt owned 89 per cent of the capital stock and was the president, treasurer, and general manager, as well as director, of the corporation, and so continued to the time the goods were sold by the plaintiff. Frank H. Schmidt, vice-president of the company, is a banker, and, in testifying in behalf of the defendant, admitted that Arthur was the head of the company and practically ran the business without the aid of the directors. The minutes of the board of directors show that meetings were held infrequently and that the only affairs of the corporation that were considered, as far as this case is concerned, related to extensions of corporate property, approval of one loan of $75,000, authorizing the treasurer to use his own discretion in depositing funds of the company in a bank or trust company, and giving the president power to draw checks without the signature of any other person.

The business dealings with the plaintiff originated on June 6, 1933, when an order was given by the defendant to ship a certain number of bundles of wire ties. This was followed by further orders, amounting to five in all, including the two consignments which are in dispute. It was admitted at the outset of the trial that all of the merchandise was delivered from the plaintiff's plant in Springfield, Ohio, to the railroad company, consigned to the Kraemer Hosiery Company at Nazareth, under uniform straight bills of lading, and that the prices were just and reasonable. The appellant reserved only the right to question that the orders were authorized by it and that it received the goods. It was further admitted that all the telegrams, orders, and letters sent to the plaintiff were signed "Kraemer Hosiery Company," or "Kraemer Hosiery Company, by A. G. Schmidt, Pres.;" the letters and orders were written on Kraemer Hosiery Company stationery; and all correspondence from the plaintiff was addressed to the defendant and received at its office. On each pur-

chase order, in bold, red type, appeared the following: "No Order valid unless countersigned by an officer of the Company." Underneath the line for the officer's signature was printed, "Pres." Thus it was clearly indicated to one dealing with the defendant that its president had authority to sign orders. The checks received by plaintiff were credited to the Kraemer Hosiery Company. When the various shipments, under uniform straight bills of lading, with the Kraemer Hosiery Company named as consignee, arrived at the freight station at Nazareth, telephone notice was given to the defendant. Thereupon, Arthur G. Schmidt would notify his manager of Willowdale Farms, which he owned and where he operated an alfalfa dehydrating and grinding plant. Schmidt paid for the first three consignments by his individual checks, but failed to pay for the last two, the basis of this suit.

The court found on sufficient evidence that the goods shipped by the plaintiff were such as could be used in the business of the defendant; that nothing transpired in these transactions to excite suspicion to put plaintiff on inquiry that the shipments were not for the use and benefit of the defendant; and, therefore, concluded that, as between the plaintiff and defendant, this merchandise became the property of the defendant when delivered to the railroad at Springfield, Ohio. See *Werner Saw Mill Co. v. Ferree*, 201 Pa. 405, 50 A. 924. As plaintiff argues, as far as it was concerned it was in the same position as if the merchandise had been received by the defendant, placed in its warehouse, converted there by Schmidt to his individual use and taken to the Willowdale Farms.

Complaint to the court's action is based "upon the finding that real authority to bind the corporation in the instant case came from the apparent authority which Arthur Schmidt had as president, treasurer and general manager of the corporation;" and it is contended that an agent having apparent authority cannot bind

a corporation as to matters which it, through its board of directors, cannot delegate to the agent or authorize him to do.

It clearly appears that Schmidt was given authority to buy ties or anything else that could have reasonably been used by defendant in its business. If the corporation had used the ties, it, undoubtedly, would be bound therefor. It was not relieved of this liability by Schmidt's use of them, unknown to the seller, for his individual purposes. An innocent party cannot be made to suffer for the wrongful acts of a faithless agent whom the corporation designates as the person to represent it. A disclosed principal is liable upon a contract made on its account by an agent authorized to make it for the principal's benefit, although the agent acts for his own purpose, unless the other party has notice that he is not acting for the principal's benefit: Restatement, Agency §165. "A disclosed or partially disclosed principal is subject to liability upon contracts made by an agent within his apparent authority if made in proper form and with the understanding that the apparent principal is a party": Restatement, Agency §159. Where officers of corporations surrender to the president the management and control of its affairs and permit him to exercise unrestrained authority for a long course of time, the corporation may be liable for his acts. In *Chestnut Street Trust & Savings Fund Co. v. Record Pub. Co.*, 227 Pa. 235, 75 A. 1067, the president, as here, absolutely managed the affairs of the defendant. He executed and delivered a note to the plaintiff who paid full value without any knowledge of the president's wrongful intention to use the proceeds for his own purposes, and the corporation derived no benefit therefrom. The interest on this note was paid from time to time by his personal check and the receipts so show. It was held that the corporation was liable, notwithstanding the note was given by the president without express authority

of the board of directors. In *Schwehm v. Chelten Trust Co.*, 257 Pa. 76, 101 A. 93, the chief executive officer and general manager of the business of the company was authorized to accept money paid to the company. He misappropriated funds paid in good faith to him as the company's representative. It was held that the corporation, having authorized him to act, must bear the loss. *Weissburg v. People's State Bank of New Kensington*, 284 Pa. 260, 131 A. 181; *Diuguid v. Bethel Church*, 119 Pa. Superior Ct. 493, 180 A. 737; *O'Donnell v. Union Paving Co.*, 121 Pa. Superior Ct. 68, 182 A. 709; *Severance, Tr. v. Heyl & Patterson, Inc.*, 123 Pa. Superior Ct. 553, 187 A. 53, are a few of the many cases that could be cited in support of this general proposition.

The appellant argues that the court was not justified in finding that the goods in suit were such as could be used in its business. In its affidavit of defense it averred a number of times that the merchandise ordered "was not necessary nor useful," but offered no testimony to support that statement.

The appellee, although not imposed with the burden, attempted, in rebuttal, to prove that these wire ties are usable in a manufacturing plant where goods are tied up in bales and that these particular ones were adaptable therefor rather than for the baling of hay and straw as ties for that purpose are normally two feet less in length than those in question. Defendant objected to plaintiff's testimony, alleging that it was (1) incompetent and irrelevant, and (2) not in rebuttal. The trial judge sustained the objection on the ground that if there was anything unusual about the purchase of these goods by the Kraemer Hosiery Company, it should have been shown by the defendant, which it failed to do, rather than by the plaintiff.

It is true that Victor R. Schmidt, now president of the defendant, testified that ties such as were bought had not been used in any part of the manufacturing, ship-

ping, or selling of the company's products, but he did not say that they could not have been used in its operations. There was nothing so unusual in the purchase of this character of merchandise by a company conducting the type of business the defendant was engaged in as to put plaintiff on notice, and there was no testimony that it actually knew what use was to be made of these ties. Having failed to carry the burden of showing that they were not useful in its business, defendant cannot complain of the court's finding that they were.

It is further alleged that the burden of showing the authority of Arthur G. Schmidt to purchase goods on credit of the corporation, without its knowledge, was upon the plaintiff; that from the initial transactions it knew that the other shipments had been paid by individual checks of Arthur G. Schmidt, and this circumstance alone gave plaintiff notice sufficient to put it on inquiry, which the law imposes upon one dealing for the first time with an agent of a corporation, citing *Schmitt v. Potter T. & Tr. Co.*, 61 Pa. Superior Ct. 301 (1915). It will be noted that the Schmitt case was decided prior to the Corporation Act of 1925, referred to hereafter.

The defendant gave notice, by the wording of its order blanks, that its president had authority to make ordinary contracts for the purchase of supplies and material (*Severance, Tr. v. Heyl & Patterson, Inc.*, supra); and the plaintiff, who it may be assumed is conversant with business usages, was justified in concluding that the purchases were of an ordinary character and that Schmidt was authorized to act for the corporation: 21 R. C. L. 856; *Robertson C. & C. Co. v. Rothey*, 106 Pa. Superior Ct. 463, 162 A. 332. An investigation by plaintiff of defendant's by-laws would have revealed only that broad, implied powers were given to its president. Even prior to the Act of 1925, the defendant, a "one-man" corporation, would have

been bound by these contracts: *Chestnut Street Trust & Savings Fund Co. v. Record Pub. Co.,* supra. As the president had authority to make the contract, the corporation was obligated to abide thereby. The learned court below well said: "There is not a single thing in any of this correspondence that would excite any suspicion in the mind of an ordinary seller. The seller is not interested in who pays the bills. It often happens that a corporation may be temporarily without funds, and the President of the corporation or a large stockholder may advance money to pay its debts." The payment of a bill by the president's individual check was an incident in that transaction that had no relation to the inception of the contract, when the liability was fixed. It was held in the Record Publishing Company case, supra, that payment made individually by an officer of a corporation on what was purported to be its obligation was not notice of any wrongdoing.

In *Putnam v. Ensign Oil Co.,* 272 Pa. 301, 307, 308, 116 A. 285 (1922), the present Chief Justice stated that the reason for the then Pennsylvania rule—that the by-laws of a corporation, defining and limiting the rights, duties and powers of its officers, places persons dealing with the corporation on notice as to the extent of the officers' power and agency—upon which the appellant relies, was a desire to protect stockholders against mismanagement of a corporate business; "but the proposition is no doubt sound that the business world, constituting by far the greater number of persons interested in the security and integrity of certain commercial acts, may be, and no doubt is, injuriously affected by the continuation of such rule;" and proposed that it would be advisable for the law to be changed in harmony with that existing in many other states. Shortly after, this suggestion was carried out by the legislature in the passing of the Corporation Act of May 12, 1925, P. L. 615 (15 PS §42), which provided in the first section: "The by-laws of any corporation

organized or doing business within the Commonwealth shall operate merely as regulations among members or stockholders of the corporation and shall have no effect upon contracts or other dealings with other persons unless such persons shall have actual knowledge of such by-laws." That section was re-enacted by the Business Corporation Law of May 5, 1933, P. L. 364, art. III, §305 (15 PS §2852-305). As a result of this legislation, corporations are now liable for the acts of an agent done within the apparent scope of authority, unless limitations are actually known to exist.

In *O'Donnell v. Union Paving Co.,* supra (121 Pa. Superior Ct. 68, 70, 182 A. 709), we cited, with approval, the following statement from 21 R. C. L. p. 854, §34: "The liability of the principal is not limited to such acts of the agent as are expressly authorized or necessarily implied from express authority. All such acts of the agent as are within the apparent scope of the authority conferred on him are also binding upon the principal, apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing." *C. D. Brown & Co., Inc. v. Standard Hide Co.,* 301 Pa. 543, 152 A. 557; *Groda v. American Stores Co.,* 315 Pa. 484, 488, 173 A. 419; *Bowman v. Press Publishing Co.,* 316 Pa. 531, 175 A. 483, are examples of cases holding that where an executive officer of a corporation has general control and supervision of its affairs, it vests in him the power of a general agent, coextensive with the business intrusted to his care, and is bound by his contracts in its behalf, made within the apparent scope of his authority.

*Paper Mill Supply Co. v. Container Corp. Co. of America,* 301 Pa. 62, 151 A. 588; *Reifsnyder et al. v. Dougherty, Tr.,* 301 Pa. 328, 152 A. 98, are readily distinguishable in their facts from the case at hand.

The defendant is liable under the law and whatever

loss has been sustained it, in good conscience, should bear as it permitted Schmidt to be clothed with apparent authority to represent it.

Judgment affirmed.