## Passarelli v. Shields

*Henninger & Robinson,* for plaintiffs.
*Lee C. McCandless,* for defendant.

GRAFF, P. J., specially presiding, April 1, 1959.— Plaintiffs instituted this action in assumpsit to recover a certain sum of money alleged to be due them as the result of a real estate transaction in which it is alleged that defendant falsely and fraudulently charged and obtained from plaintiffs a certain sum of money as a real estate commission upon a dwelling house erected upon the lot of land sold to plaintiffs by defendant.

68

Upon trial of the case the jury returned a verdict in favor of plaintiffs in the sum of $840. This matter now comes before us upon a motion for judgment notwithstanding the verdict, and a motion for a new trial.

The undisputed evidence discloses that in the year 1957 and prior thereto, Carl E. Shields and Company was engaged in the insurance and real estate business in this county. Carl E. Shields and Company was a fictitious name for Carl E. Shields. The S. and S. Development Company was a corporation holding title to a certain plan of lots in this county one mile south of the city of Butler. The development company was a corporation in which Carl E. Shields held one-half of the stock. The lots of land owned by the corporation were sold by Carl E. Shields as agent.

Under the ordinary procedure, Gottlieb Construction Company built the houses erected upon the various lots for sale after a deed for such lots had been conveyed to Gottlieb. Under an agreement between Shields and Gottlieb, a real estate commission was charged upon such lots and the dwellings erected thereon, which was payable to defendant. When the house and lot was conveyed by Gottlieb Construction Company to a purchaser, Gottlieb Construction Company had the exclusive right to erect all dwelling houses upon the Meadowwood Plan of Lots.

In April 1957, and prior thereto, Mrs. Thelma Adams worked as a real estate agent for defendant Shields. She was a licensed real estate agent and under the law it was necessary for her to make sales through a broker which in this case was defendant.

In April of 1957 plaintiffs, who lived in the City of Butler, were desirous of purchasing a lot in the country and erecting a dwelling house thereon. They were approached by Mrs. Adams, who at this time was acting as a sales agent for defendant. Some time

in April the two plaintiffs, Gottlieb, Shields and Mrs. Adams visited the Meadowwood Plan of Lots. At that time there was a discussion of the type of dwelling house which they desired to build. Plaintiffs were then advised that Gottlieb Construction Company would be required to build any building upon the plan of lots. At this time it clearly appears that all of the parties understood that Mrs. Adams was acting as a sales agent for defendant.

On May 31, 1957, a written agreement was entered into between the S. and S. Development Company and plaintiffs for the sale of Lot No. B-10 for the price of $3,000. In this agreement it was specifically provided that Gottlieb Construction Company would erect the dwelling house. Upon June 5, 1957, a deed for the lot of land was given to plaintiffs and the same provision appeared concerning the construction of the dwelling house by Gottlieb. The $3,000 purchase price was paid upon which the development company paid a commission of 10 percent. This commission was divided between Mrs. Adams and Shields.

Plaintiffs' evidence was to the effect that Mrs. Adams specifically represented to plaintiffs that by taking title in themselves from the development company, transfer tax would be saved in the amount of approximately $400, and approximately the same amount for the reason that plaintiffs would secure the construction loan. Plaintiffs' evidence was further to the effect that there would be no commission charged upon the construction and cost of the house for the reason that title to the land had already been vested in plaintiffs.

It appears that in August of the same year Gottlieb and Shields had some difficulty. The price charged by Gottlieb to plaintiffs for the construction of the dwelling house was $16,400. Gottlieb then advised plaintiffs that this amount included $840 as commis-

sion which he had added to the cost of the construction of the house and he had paid to defendant Shields. It is to recover this amount of money that this suit has been instituted.

Plaintiffs' evidence is to the effect that they were at no time told of any secret agreement between Gottlieb and Shields as to the charging of such a commission and adding it to the purchase price. In fact their evidence was that it was explicitly stated that no such commission would be charged and this in spite of the fact that both the written sales agreement and the deed contained a provision that the construction would be made by the Gottlieb Company.

This particular bit of evidence was denied by defendant, both upon the part of Mrs. Adams and also by Shields. Shields testified as follows:

"Q. Had you mentioned to them anything about a commission on the house?

"A. The time that we were in Meadowwood and Mr. and Mrs. Passarelli were there I told them that we couldn't sell them the lot—

"By the court: That was on this Sunday afternoon?

"By the witness: That is right."

Examination resumed by Mr. McCandless:

"A. We couldn't sell them the lot. We couldn't under any circumstances, unless Mr. Gottlieb built the house, because that was where we made our money, on the sale of the houses; and the second time I mentioned it was when this agreement was signed; I said I wanted it to be perfectly clear, so that there would be no misunderstanding, and I said, 'I am putting it in the agreement that Mr. Gottlieb is to build the house,' and I said, 'I am also puting it in the deed,' because that was where we got a commission, for building the houses.

"Q. Did you tell them that at that time?

"A. Yes, I did.

"Q. They both understood it?

"A. Well, there was no objection to accepting the agreement. I have, no way of knowing whether they understood it or not. I made it as plain as it is possible to make it, under any real estate agreement, that we were selling the house and getting a commission. We put it in the Article of Agreement, we put it in the deed, and we told them by actual telling, the very first day we met."

This testimony was denied by plaintiffs.

The first question of fact submitted to the jury was whether Mrs. Adams had specifically made a representation to plaintiffs that there would be no commission charged upon the house. This presented an issue of fact and the jury by its verdict concluded that such representations were made and further that they were false in view of the fact that a secret agreement existed between Gottlieb and Shields by the terms of which a commission was to be charged and paid to Shields and added to the purchase price of the house and lot.

The next question submitted to the jury was whether Mrs. Adams had authority to make such a representation. We admitted in evidence an agreement in writing between defendant and Mrs. Adams concerning her employment as salesman for defendant. Under the terms of this writing it is specified that Shields would not be bound by any promise or representation of the agent. It therefore appears that there was no express authority given to the agent to make such representation.

The question then arose as to whether she had apparent authority to make such.

The liability of a principal to third parties for the act of an agent must rest on: (1) Express authority, or that which is directly granted; (2) implied authority, to do all that is proper, usual and necessary

to the exercise of the authority actually granted; (3) apparent authority, as where the principal holds one out as agent by words or conduct; and (4) agency by estoppel: Reifsnyder v. Dougherty, 301 Pa. 328.

The liability of a principal is not limited to such acts of an agent as are expressly authorized or necessarily implied from the express authority, but includes also all such acts of the agent as are within the apparent scope of the authority conferred on the agent. Where the principal places his agent in, or knowingly permits him to occupy, a position in which, according to the ordinary experience and habits of mankind, it is usual for the occupant to have authority of a particular kind, anyone having occasion to deal with the agent is justified in inferring that he possess such authority, unless the contrary shall be made known: O'Donnell v. Union Paving Company, 121 Pa. Superior Ct. 68.

Apparent authority is such authority as a reasonably prudent man, using diligence and discretion, in view of his conduct, would naturally suppose the agent to possess: Murphy v. Beverly Hills Realty Corp., 98 Pa. Superior Ct. 183.

The question of whether Mrs. Adams had apparent authority to make the representations to plaintiff was submitted to the jury as a question of fact. There can be do doubt that defendant held Mrs. Adams out as his sales agent.

It is reasonable to conclude that if a person purchases a lot of land and contracts with a construction company to erect a dwelling thereon, that nothing will be paid to such contractor except the cost of the erection of the building, and this is true even though the agreement and deed specifically provided that Gottlieb Construction Company would erect the building. If a commission was to be added it would be only reasonable to assume that such fact would be made

specifically known to the purchaser, which the jury found in this case was not done.

The real estate salesman would receive at least a part of any commission upon a sale. Here again we are of the opinion that a reasonably prudent person would be justified in concluding that such agent had authority to make representations concerning the payment or nonpayment of a real estate commission.

It is true that the evidence of the defense could lead to a contrary conclusion. However, we are of the opinion that this question was one of fact, for the jury's determination.

We conclude that the motion for judgment notwithstanding the verdict is without merit and should be refused.

In support of the motion for a new trial, general reasons were advanced. It is contended that the court erred in affirming plaintiffs' requests for instructions. All of these had to deal principally with the question of false and fraudulent representations and the reliance upon the same by plaintiffs. In the written instruments, although it was expressly provided that Gottlieb Construction Company would erect the dwelling house, nevertheless there was no provision that any commission would be asked for and charged to the purchasers of the lot. If plaintiffs' evidence is to be believed, there was a concealment by defendant of a fact which it would be reasonable to assume would in fairness be disclosed. This reason was without merit.

Defendant complains that the court refused to affirm its first and third points for instruction. To affirm either or both of these points would have meant a directed verdict.

During the trial of the case and in order to contradict the witness, Gottlieb, he was asked whether he had not previously given testimony in a proceeding to

the contrary. Although this case had previously been before a board of arbitrators, this fact was not known to the trial judge. It was directed that the witness be given the time and place of the giving of the contrary testimony. It then appeared without objection that it was before a board of arbitrators, consisting of attorneys Braham, Cingolani and Cochran. That evening there appeared in the Butler Eagle a short statement concerning the case on trial, in which it was set forth that the board of arbitrators had made a finding in favor of plaintiff. At the close of the testimony a motion was made to withdraw a juror and continue the case for the reason that five members of the jury signified that they had read the article. This motion was refused and the jury carefully instructed that they should totally disregard anything concerning the case, excepting that which they heard from the witness stand.

The question now arises whether the reading of this article was so prejudicial as to warrant the granting of a new trial.

In Commonwealth v. Grotefend and Haun, 85 Pa. Superior Ct. 7, the court, on page 12, stated as follows:

"There is no doubt that in a number of cases where jurors are allowed to separate, they will go home and read newspapers and in them there are frequent allusions to trials in progress, but it is also recognized that jurors are sworn to try the case according to evidence and that it is pretty well understood that comments by newspapers, unless of an inflammatory or argumentative nature, are not to be taken seriously."

In Sakson v. Finlayson, 6 D. & C. 2d 514, it was held that defendant's case was not prejudiced by the publication of a newspaper report during the course of the trial which described the details of the accident, the fact that defendant was incarcerated after

being found guilty of hit and run criminal charge, the amount of damages demanded by plaintiff and that an insurance carrier was concerned in the case.

In Commonwealth v. Morrison, 180 Pa. Superior Ct. 133, it was held that the publication in a newspaper which brought out that one of defendants had been convicted of "four counts of moral offenses against young boys" was not sufficiently prejudicial to warrant the granting of a new trial. See also Commonwealth v. Schwartz, 178 Pa. Superior Ct. 434; Commonwealth v. Deni, 317 Pa. 289.

In view of the explicit and careful instruction of the court that the jury should disregard any account in the local newspaper, we are of the opinion that defendant's case was not prejudiced.

*Order*

And now, March 31, 1959, the motion for judgment notwithstanding the verdict is refused and judgment directed to be entered on the verdict upon payment of the jury fee.